In re ACCEPTANCE INSURANCE COMPANIES, INC., SECURITIES LITIGATION

No. 8:99 CV 547.

United States District Court, D. Nebraska.

Feb. 27, 2003.

Unsealed Sept. 20, 2004.

Frederick S. Cassman, Abrahams, Kaslow Law Firm, John K. Green, Pickens, Green Law Firm, Omaha, NE, Gregory M. Castaldo, Schiffrin, Barroway Law Firm, Bala Cynwyd, PA, Jonathan M. Stein, Paul J. Geller, Cauley, Geller Law Firm, Boca Raton, FL, Joseph V. McBride, Rabin, Peckel Law Firm, Justin C. Frankel, Michael A. Swick, Robert A. Wallner, Steven G. Schulman, Milberg, Weiss Law Firm, Marvin L. Frank, Rabin, Murray Law Firm, New York City, for Plaintiffs.

David H. Kistenbroker, Joni S. Jacobsen, Laura M. Vasey, Leah J. Domitrovic, Matthew J. Cannon, Michael S. Weisman, Pamela G. Smith, Theresa L. Davis, Katten, Muchin Law Firm, Alan N. Salpeter, Brian J. Massengill, Daniel J. Delaney, Mayer, Brown Law Firm, Chicago, IL, J.

Michael Gottschalk, Joseph K. Meusey, Mark C. Laughlin, Fraser, Stryker Law Firm, Omaha, NE, for Defendants.

Edward G. Warin, McGrath, North Law Firm, Omaha, NE, pro se.

Gregory A. Horowitz, Kramer, Levin Law Firm, New York, NY, pro se.

Marc A. Topaz, Schiffrin, Barroway Law Firm, Bala Cynwyd, PA, pro se.

Gregory M. Castaldo, Schiffrin, Barroway Law Firm, Bala Cynwyd, PA, pro se.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO AMEND COMPLAINT

CAMP, District Judge.

This matter is before the Court on the Plaintiffs' Motion to Amend the Complaint (Filing No. 156), which was filed under seal, and the Plaintiff's Motion to Strike Defendant's Supplement in Opposition to Plaintiff's Motion for Leave to Amend (Filing No. 207) and the Plaintiffs' Motion for Leave to File a Reply Brief, Instanter (Filing No. 209).

In their motion to amend, the Plaintiffs seek to reinstate claims alleging violations of Sections 11 and 15(a) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77o (the "Securities Act"), and allegations to bolster their claims under Section 10(b) and 20(a) of the Exchange Act of 1934, 15 U.S.C. § 78j and 78t(a) (the "Exchange Act") and Rule 10(b)–5, 17 C.F.R. § 240.10b–5. These are substantially the same claims that Defendants succeeded in dismissing under Fed.R.Civ.P. 12(b)(6) before discovery commenced. *See* Amended Memorandum and Order of March 19, 2001, Filing No. 65. The Court dismissed the claims based on the Plaintiffs' failure to allege facts sufficient to state a claim for relief. (Judge Shanahan presiding). Having now completed most, if not all, of the factual discovery in the case, Plaintiffs seek to amend the consolidated class action complaint in order to resurrect those claims for which they now claim to have factual support and to supplement existing 10(b) and Rule 10(b)–5 claims.

Defendants oppose the motion to amend, arguing that despite all the factual discovery that the Plaintiffs have taken, Plaintiffs are no closer now to having a factual basis for their claims under Sections 11 and 15(a) of the Securities Act than they were nearly two years ago when the claims were originally dismissed.

As a preliminary matter, the Court denies the Plaintiffs' Motion to Strike Defendant's Supplement in Opposition to the Plaintiff's Motion for Leave (Filing No. 207), but the Court grants the Plaintiff's Motion for Leave to File a Reply Brief, Instanter (Filing No. 209). All the briefs, including Plaintiffs' reply brief, and the evidence have been considered in connection with the resolution of the Plaintiffs' motion to amend.

**Procedural History**

This action was commenced by the filing of the first complaint on December 29, 1999. Separate complaints were filed in two other actions against the Defendants on February 7, and February 25, 2000, respectively. In April, 2000, the Court consolidated these three actions,[1] appointed lead Plaintiffs, and approved lead counsel for the Plaintiffs (Filing No. 32). On June 16, 2000, Plaintiffs filed a Consolidated Class Action Complaint, naming as defendants Acceptance, AICI Capital Trust, Kenneth Coon, Georgia Mace, John Nelson, and others and asserting claims under the Securities Act and the Exchange Act (Filing No. 40).

---

1. In addition to the claims set forth in the original complaint in 8:99CV547, the consolidated case includes 8:00CV82 and 8:00CV124.

The crux of the Plaintiffs' claims involve allegations that the Defendants misrepresented Acceptances' loss reserves in a Registration Statement and Prospectus filed June 6, 1997. Included in the Registration Statement was the statement that Acceptance's "reserves are based on estimates of trends in claims severity, judicial theories of liability and other factors." Ex. G at Registration Statement, p. 15, amendments and Prospectus at 19.

Plaintiffs contend that by failing to disclose anticipated and actual losses precipitated by the now well-known 1995 California Supreme Court decision, *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995), in the 1997 Registration Statement, the Defendants violated federal securities laws. The *Montrose* Court adopted for the first time in California a "continuous injury trigger" theory of liability which had the effect, "in the case of successive policies ... [that] damage that is continuous or progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods." *Id.* at 880. In summary, Plaintiffs allege that the Defendants knew, when they filed the Registration Statements in 1997, all of the material information that Acceptance later made public in a November 15, 1999 press release, and that Defendants' failure to disclose this information in the Registration Statement violated the Securities Act of 1933 and the Exchange Act of 1934.

In the November 15, 1999, press release, Acceptance announced that it would "record a loss of $25.2 million or $1.77 per share for the third quarter, and $18.3 million or $1.28 for the first nine months, of 1999," resulting "primarily from a strengthening of loss and loss adjustment expense reserved for prior periods of approximately $44 million ..." Filing No. 40 at ¶ 39. Acceptance also explained its reason for the loss, stating that it had experienced an increase in claims, discovered during the Company's annual third quarter actuarial study, and that it found the increase in claims to be "primarily associated with policies the Company issued prior to 1996 to California contractors and subcontractors." The Company explained the impact of the *Montrose* opinion: "In 1995, the California Supreme Court dramatically altered the framework of insurance coverage for construction defect claims by adopting the 'continuous trigger' theory for losses involving continuous or progressive damage. The increase in unreported claims arose primarily from policies issued before this court decision." *Id.*

In lieu of answering the Consolidated Class Action Complaint, the Defendants moved to dismiss the Amended Consolidated Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted (Filing No. 45). The Court granted Defendants' motion to dismiss the First Claim which alleged a violation of Section 11 of the Securities Act of 1933 (misrepresentation in connection with a registration statement) and the Second Claim, which alleged a violation of section 15 of the Securities Act of 1933 (liability of controlling persons for violations of section 11). The Court did not dismiss the Third and Fourth Claims that are based on violations of Section 10(b), and Section 20(a) of the Exchange Act of 1934, and Rule 10(b)–5, except that the Court found that the allegations relating to Defendants' failure to disclose contingent losses attributable to the *Montrose* decision also failed to state a claim for relief under sections 10(b) and 20(a) of the 1934 Act and Rule 10(b)–5. See Amended Memorandum and Order, March 19, 2001, Filing No. 65, at 8.

The Court stated:

In the context of this case, the obligation to report a loss contingency arose

only upon fulfillment of the two conditions specified in FAS–5, namely, information available prior to issuance of the financial statements indicated the probability that a liability had been incurred at the date of the financial statements and that the amount of loss [could] be responsibly estimated. The Complaint alleges no facts to support the existence of either condition as of the date of the financial statements incorporated into the registration statement.... Absent information available at the time of the Form 10–K and 10–Q, e.g., significant increases in reported claims for losses involving continuous or progressive damage, or industry-wide accounting adjustments for loss reserves in response to *Montrose*, recognition of an estimated loss in 1996 could have been speculative and potentially misleading."

Amended Memorandum and Order, Filing No. 65, at 8.

With regard to the 1934 Act claims, the Court determined that Plaintiffs had adequately stated claims against the Defendants, except to the extent that the Plaintiffs relied upon allegations that the loss attributable to *Montrose* was reasonably estimable in 1996. *Id.* at 11, 42 Cal. Rptr.2d 324, 913 P.2d 878.

Thereafter, the Acceptance companies and Defendants Coon, Mace and Nelson filed their Answer and Affirmative Defenses to the Complaint (Filing No. 67). The parties engaged in discovery, and during a status conference conducted at the conclusion of the fact discovery phase in September 2002, Plaintiffs informed the Defendants and the Court that they intended to bring a motion to amend the Complaint. Plaintiffs filed this motion to amend the Consolidated Class Action Complaint on September 16, 2002, seeking to reassert the claims that Judge Shanahan had previously dismissed.

Plaintiffs claim that the amendments are supported by "new" facts unearthed during fact discovery. Defendants oppose the motion contending that all the information that the Plaintiffs now assert as "newly discovered" was available to Plaintiffs at least six months before the motion to amend was filed—and with regard to some facts much earlier—and that Plaintiffs' attempt to amend at this late date should be denied based on undue delay and unfair prejudice to the Defendants, Plaintiffs' bad faith in conducting discovery and because allowing the amendments would be futile. Defendants' opposition to the motion was filed in October 2002, although the Court has accepted supplements to the record that were filed as late as this month.

## Standard of Review

The Federal Rules of Civil Procedure allow the district court to freely grant leave to file an amended pleading when justice so requires. Fed.R.Civ.P. 15. However, the Court of Appeals for the Eighth Circuit has stated that a district court may exercise its discretion to deny a motion to amend under certain circumstances, including "undue delay or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir.2000) quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

The parties do not dispute that these principles guide the Court's review of Plaintiffs' motion to amend. Plaintiffs have provided the Court with citation to three cases in which the district courts have reinstated a previously dismissed claim after the moving party had obtained evidence supportive of the claims. In these cases, the courts did not find evi-

dence of bad faith or dilatory motive. In addition, these courts did not find that the amendments would be futile. Where prejudice to the defendant could be cured, the courts permitted plaintiffs' amendments. See *Kurzweil v. Philip Morris Companies, Inc.*, 1997 WL 167043, 10 (S.D.N.Y.1997) (allowing plaintiffs to file an amended complaint, and specifically finding that they had not acted in bad faith, with undue delay, and causing no undue prejudice); *Lehman Bros. Commercial Corp. v. Minmetals Intern. Non–Ferrous Metals Trading Co.*, 1996 WL 346426, 2 (S.D.N.Y., 1996) (allowing plaintiff to amend because there was no evidence that plaintiff's delay was occasioned by bad faith or was unduly prejudicial); *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 426 (D.D.C.1993)(holding that defendant would not be prejudiced by allowance of the amendment because defendant had sufficient time before the trial date to prepare).

Defendants maintain that the Plaintiffs' amendments should not be allowed because several factors militate against amendment, including: 1) the Plaintiffs' unexplained delay in seeking leave to amend; 2) the unfair prejudice that Defendants would suffer if the amendments were allowed; 3) the "bad faith" with which Plaintiffs conducted fact discovery; and 4) the futility of allowing the amendment. *See* Defendant's Brief in Opposition to the Plaintiffs' Motion to Amend Complaint at "Introduction."

Because this motion to amend seeks to add claims that have already been addressed by the Court; because the motion comes at the close of fact discovery; and because these consolidated cases already have been on the Court's docket for more than three years, the Court is not inclined to accept Plaintiffs' argument that they are entitled to unfettered amendment. Instead, given the status of the case, the Court shall carefully consider each of the factors identified in the *Dennis* case and the parties' arguments in favor and in opposition to the motion.

**Delay**

Defendants contend that the Plaintiffs have unduly delayed in bringing this motion to amend because nearly all of the new facts upon which they rely in support of the amendment were known to Plaintiffs, or could have been known to them through the exercise of reasonable diligence, more than six months ago. Plaintiffs argue that the Defendants agreed to extend the deadline for the filing of motions to amend until after the close of expert discovery, and that this agreement was incorporated into the scheduling order of this case. The dates set forth in the scheduling order are proof that the filing of this motion for leave to amend at this time in the proceeding was contemplated by the parties and the Court. Therefore, Plaintiffs conclude, Defendants cannot credibly accuse them of undue delay.

■ The Court is guided in its analysis of the delay issue by the Eighth Circuit Court of Appeals which has stated that when a motion to amend a complaint is based on allegedly new information that the plaintiff knew, or through the exercise of reasonable effort could have known at an earlier time, the motion should be denied. *See Floyd v. Mo. Dep't of Soc. Serv.*, 188 F.3d 932, 939 (8th Cir.1999) (affirmed denial of motion for leave to amend based on undue delay because plaintiff had knowledge of the material information two years before seeking amendment); and *Svoboda v. Trane Co.*, 655 F.2d 898, 899–900 (8th Cir.1981)(affirming denial of leave to amend where plaintiff knew the facts supporting new claim when original complaint was filed and defendants had already conducted extensive discovery.)

In support of the amendments to add the Section 11 and 15(a) claims, Plaintiffs

rely heavily upon representations letters prepared by Acceptance's Chief Financial Officer, Defendant Mace, to the independent auditor (Exs. 20, 31 and 33), and upon the PricewaterhouseCoopers' ("PwC") Actuarial Opinions, which incorporate verbatim the language from Mace's representations letters into its opinions (Exs.30, 32, 34). The material statement is:

Acceptance Indemnity Insurance Company has the following risk factors that expose the Company's reserves to significant variability: 1) The Company writes a contractors program, in California, which has generated construction defects claims. Estimation of ultimate liabilities for these claims is unusually difficult due to the lack of specific historical data.

Defendants specifically contend that PwC's Actuarial Opinions for 1997, 1998, and 1999, which have the same information as is contained in the representations letters authored by Mace, were available to Plaintiffs as public documents several years ago. As early as March 1998, Acceptance and its subsidiaries that wrote the California contractors' insurance were headquartered and did business in Nebraska. Consistent with the National Association of Insurance Commissioner's ("NAIC") Annual Statement Instructions, Defendants filed the PwC Actuarial Opinions with Acceptance's annual statements for each year: 1997, 1998 and 1999 (Ex. K). Those opinions have been available as public information through the Nebraska Insurance Commission beginning on March 1, 1998. (Mace Aff. ¶ 10). Indeed, Plaintiffs' counsel has acknowledged that they are "publically available and produced upon payment of copying charges." (Ex. L). In addition, the Defendants argue, they produced these documents to Plaintiffs on November 2, 2001—just a few months after Judge Shanahan dismissed the original claims and eight months before Plaintiffs filed this motion.

Defendants contend that Plaintiffs' characterization of this evidence as newly discovered is unjustified. The 1997 Form 10-Ks for the three insurance companies that also wrote construction coverage in California, each of which makes a more detailed disclosure regarding *Montrose* than Acceptance did, were filed with the Securities and Exchange Commission during the first quarter of 1998, and were available for public inspection since that time. The companies' Form 10-Ks are public documents that are available on-line through the SEC's Electronic Data Gathering, Analysis, and Retrieval system known as "EDGAR."

Defendants also contend that Plaintiffs should not be allowed to rely upon the *Magid* decision, explained more fully below, as factual support for the amendments because *Magid* was decided in November 2001, several months before Plaintiffs brought this motion. Defendants contend that the Plaintiffs knew, or should have known, of this opinion at least 10 months before filing the motion to amend because the decision was publicly available on LEXIS, and because Plaintiffs' counsel had a relationship with the plaintiff's counsel in *Magid*.

■ Even though motions to amend were allowed to be filed through the date that expert discovery was to be completed, the Court is persuaded that all of this information, with the sole exception of the *Magid* decision, was available to Plaintiffs even before this action was commenced, and certainly before the Consolidated Class Action Complaint was prepared and filed. However, because delay alone is an insufficient basis upon which to deny a motion to amend, *see Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 694 (8th Cir.1981), the Court will also consider the other factors identified in the *Dennis* case.

**Unfair Prejudice**

The Defendants argue that the Plaintiffs' motion should be denied because of the unfair prejudice that would result to them if the amendment is allowed to proceed at this time. The undue prejudice that Defendants identify is that, if the amendments are allowed, then the parties will be required to reopen fact discovery. The case has already progressed through the factual discovery phase. If they have not already, the parties will commence expert discovery, and a trial date will likely be scheduled in the near future. Defendants contend that if the amendment is allowed, additional written discovery, document analysis, and witness depositions will be required. This case has moved through discovery more slowly than it should have, due in large part to the Plaintiffs' dilatory conduct during discovery (see Filing Nos. 146 and 214). I agree with Defendants' argument, and I conclude that the unfair prejudice to Defendants to engage again in factual discovery—which has been contentious—outweighs any prejudice claimed by the Plaintiffs, specifically including Plaintiffs' argument that a Section 11 claim is easier to prove than a Section 10–b claim.

**Bad Faith**

■ The Court has recently considered the Plaintiffs' Statements of Appeal relating to Judge Jaudzemis' Orders at Filing Nos. 146. 161 and 173. Judge Jaudzemis' Order of August 2, 2002, recounts the discovery abuses in which Plaintiffs have engaged. Particularly egregious conduct identified by Judge Jaudzemis included the Plaintiffs refusal to make adequate Rule 26 disclosures in a timely manner, including the identification of witnesses by name, addresses, phone numbers and summary of their knowledge; the Plaintiffs' refusal to produce documents that they rely upon in support of their claims; and the Plaintiffs' refusal to prepare a privilege log and produce it to the Defendants. In addition,

Plaintiffs waited until the final month of fact discovery to notice and take several depositions, the first of which was taken on July 11, 2002, even though Defendants had made the witnesses available, at the latest, beginning on March 1, 2002. Against the backdrop of these facts, Plaintiffs' argument that they did not obtain crucial deposition testimony until July 2002 evokes little sympathy from this Court.

The Plaintiffs' response to the Defendants' argument that they have engaged in bad faith is that "the Defendants have too." The record in this case does not support such a statement. I find that Plaintiffs have engaged in dilatory conduct and bad faith during the discovery process thus far, and this conduct weighs heavily against granting leave to allow the amendment. See *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224–26 (8th Cir.1994).

Futility

■ Futility is an independent basis for denying a plaintiff's motion for leave to amend. *In re K–tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 899 (8th Cir.2002). The Eighth Circuit Court has held that the standard of review on the issue of futility is whether the proposed amendment would survive a motion to dismiss. *Williams*, 21 F.3d at 225. Where, as here, the parties and the Court have the benefit of fact discovery, application of a motion-to-dismiss standard to a motion for leave to amend is both practical and appropriate. *Id.*

Defendants contend that granting Plaintiffs leave to amend at this time would be futile because the Plaintiffs have not demonstrated that the Defendants made any misrepresentation or omitted any fact relative to their setting of loss reserves in the Registration Statement or Prospectus. Accordingly, Defendants conclude that the Plaintiffs' claims under Sections 11 and

15(a) fail to state a claim for relief. Plaintiffs contend that evidence obtained during discovery demonstrates that *Montrose* was having "a negative impact on. Acceptance well prior to the commencement of the Class period and was exposing the Company to enormous risks that never were disclosed in the registration statement." Plaintiffs' Brief at 8.

The Registration Statement states:

The reserves for losses and LAE [loss adjustment expense] established by the Company are estimates of amounts needed to pay reported and unreported claims and related LAE based on facts and circumstances then known. Reserves are based on estimates of trends in claims severity, judicial theories of liability, and other factors.

The Company underwrites both property and casualty coverages in a number of specialty areas of business which may involve greater risks than standard property and casualty lines, including the risks associated with the absence of a long-term, reliable historical claims experience. These risk components may make more difficult the task of estimating reserves for losses, and cause the Company's underwriting results to fluctuate.

The establishment of appropriate reserves is an inherently uncertain process, and it has been necessary, and over time may continue to be necessary, to revise estimated loss reserve liabilities. Adverse loss experience related to prior years resulted in a strengthening of loss reserves in each of 1994, 1995, and 1996, in the amounts of 5.1 million, $22.3 million and 9.5 million, respectively. There can be no assurance that the ultimate liability will not materially exceed the Company's loss and LAE reserves and have a material adverse effect on the Company's results of operations and financial condition in the future. Condi-

tions and trends that have affected the development of loss reserves in the past may not necessarily occur in the future. (Registration Statement at 19; and Ex. J, 1996 10–K at 6–7.)

Defendants contend that Plaintiffs' amendments are futile for several reasons. First, Defendants maintain that they disclosed every material fact that they were required to disclose, as a matter of law, in the 1997 Registration Statement. Defendants argue that Financial Accounting Standard 5 ("FAS–5") did not require Acceptance to disclose a loss or a risk of loss that it was unable to reasonably estimate. Defendants also assert that Acceptance's disclosure in the 1997 Registration Statement, including those disclosures contained in the 10–K report for 1996 and the 10–Q report for the first quarter of 1997, both of which were incorporated into the Registration Statement, disclosed the risk of loss occasioned by the *Montrose* decision.

In support of the argument, Plaintiffs rely upon several exhibits, but primarily upon 1) "representation" letters authored by Defendant Mace to Acceptance's outside actuaries; 2) Coopers & Lybrand auditing opinions to Acceptance; 3) the acknowledgment of current and former Acceptance officers that they understood the significant risks presented by *Montrose* and that they were concerned about those risks; *(see* Ex. 7, Mace Tr. at 42–44; Ex. 3, Coon Tr. at 53–54; Ex. 9, O'Brien Tr. at 121; Ex. 40, Nelson Tr. 22–23.; Ex. 2, Calpin Tr. at 51–53, 95–97; 103, 119–124; Ex. 4, Duffett Tr. at 13, 88–89, 81; Ex. 10, Seaholm Tr. 43–44, 51, 98 [i.e., "Q: When did you begin seeing an increase in those lawsuits [from California homeowners associations]? A: I would say '96 to '97, in that range"] ); 4) deposition testimony of Robert Haney, a former Senior Vice President of Claims for Acceptance, who stated that he had

conversations with Acceptance's CEO, Kenneth Coon, and Acceptance's President, John Nelson, in 1996 as to whether Acceptance's increase in California construction claims were attributable to *Montrose*, (Ex. 6, Haney Tr. at 58–60); and 5) deposition testimony of Michael Mertz, that Acceptance's claims department employees were aware of an increase in claims coming out of California as early as 1997, (Ex. 39, Mertz Tr. at 92–93).

Plaintiffs have put forth evidence that the people making the loss reserve decisions, including Coon, Mace, and Nelson, appreciated that Acceptance was operating under an increased risk of incurring higher than usual claims after *Montrose*. Indeed, Defendants do not appear to dispute that fact. Plaintiffs' evidence also demonstrated that the persons at Acceptance who were responsible for setting the reserves had markedly different views on the factors that needed to be considered in setting loss reserves and the weight that those factors should be given. (*See, e.g.,* Mertz Tr. at 100). However, none of this evidence lends factual support to the claim that Defendants could have reasonably estimated the amount of loss posed by the risk of additional claims following *Montrose*.

Plaintiffs also point out, accurately, that some of the witnesses, including Duffett, Seaholm, and Haney, have made statements in their depositions that the number of construction-related claims in California were on the rise as early as 1996 and 1997, and these witnesses generally attributed the increase in claims to *Montrose*. However, even those witnesses either declined or were unable to identify a reasonable estimate of the anticipated loss that was facing Acceptance. Though they are obviously related, an increase in claims is not the same thing as an increase in liability. The problem inherent in estimating the amount of loss occasioned by a known number of claims—when, as was the case here, there is little, if any, historical claims experience information to draw upon—is the job of underwriters and actuaries. Acceptance sought and relied upon the expertise of auditors and actuaries, at least to some degree, in setting its reserves.

■ Defendants assert, and the Court agrees, that the disclosures in the 1997 Registration Statement and the 1996 10–K report include the same material facts as the PwC Actuarial Opinions and Mace's representations letters, except for specific reference to the identification of one line of specialty insurance for California contractors. What is not disclosed in the Registration Statement and Prospectus, including the 10–K and 10–Q reports, is an objective fact of loss or the amount of projected losses resulting from the California court's adoption of a continuous trigger theory of liability. However, the Court finds that there was no duty to disclose that information precisely because those facts were not known to Acceptance at the time of the filing nor were they reasonably estimable. See Ex. H, Affidavits of Coon, Mace, and Nelson; Ex. 7, Mace TR. at 42–45; and Nelson TR. at 106, 108.

There is nothing in the record on this motion that requires me to engage in an analysis materially different from Judge Shanahan's analysis. Judge Shanahan found that FAS–5 did not impose upon Defendants a duty to disclose *Montrose*-related loss contingencies in its SEC filing. As Judge Shanahan stated, "in the context of this case, the obligation to report a loss contingency [pursuant to FAS–5] arose only [when] information available prior to the issuance of the financial statements indicated the probability that a liability had been incurred at the date of the financial statements and that the amount of the loss could be readily estimated." Amend-

ed Memorandum and Order dated March 19, 2001 at 8.

Plaintiffs have not persuaded the Court that there was credible evidence in 1997 that Acceptance had actually incurred significant liabilities that it had a duty to disclose and did not. Nor is the Court persuaded that there is evidence demonstrating that Defendants were able to reasonably and credibly estimate, as of the date that the Registration Statement was filed, a future loss contingent upon the number of California contractor claims that were submitted. To the extent Acceptance knew of and appreciated the risks associated with the *Montrose* opinion, the Court finds that the disclosures contained in the Registration Statements adequately addressed the requirements of FAS-5 and GAAP. See *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 548 (8th Cir.1997)(dismissing based on the adequacy of the prospectus language that conveyed the riskiness of the investment to the investor).

Plaintiffs also offer in support of their amendments the fact that at least three other companies did disclose actual negative effects of *Montrose* in their 1996 financial statements. (See PX 36 at 155, 37 at 230, and 38 at 335–36.) These disclosures are more specific than the disclosures made by Acceptance and, in two cases, the companies noted that they would be adjusting their loss reserves. All three

companies expressly refer to the *Montrose* decision as one factor warranting an increase in the loss reserves, but *Montrose* is only one of multiple factors identified by the companies as requiring the adjustment of the loss reserves. I agree that Plaintiffs are not required to conduct an industry-wide census to support their motion to amend, Plaintiffs' Reply Brief at 11, but then neither is this Court required to parlay the experiences of three companies into an industry-wide standard applicable to all insurance companies who wrote contractors insurance in California in the wake of *Montrose*.

Finally, Plaintiffs also contend that the statement made in the Registration Statement that Acceptance's reserves were based on "judicial theories of liability" is false and that the Sections 11 and 15(a) claims should be allowed to proceed based on that misrepresentation. The Plaintiffs claim that the statement is false is based upon a judicial opinion issued in the case of *Magid v. Acceptance Ins. Cos., Inc.*, 2001 WL 1497177, 2001 Del. Ch. LEXIS 141 (Vice Chancellor Jacob presiding).[2] *See* proposed Second Consolidated and Amended Complaint at ¶ 30. Plaintiffs rely upon the *Magid* court's statement in that opinion to the effect that it was: "the undisputed fact that in this case no reserve adjustment was made in response to the *Montrose*-related risk until four years af-

---

**2.** In that action, Dr. Bernard Magid initiated a summary proceeding authorized by 8 Del. C. § 220 to review Acceptance's books and records. His stated purpose in seeking documents relating to Acceptance's setting of loss reserves was to determine whether the company was being mismanaged. A section 220 proceeding allows a shareholder to request an inspection of a company's books and records for certain limited purposes, but Acceptance questioned Magid's stated purpose and argued that Magid was being used as a pawn by the Milberg, Weiss law firm, Plaintiffs' counsel in this case, to obtain discovery in contravention of this Court's stay of discovery that

was then in place. Acceptance contended that Milberg, Weiss was behind the plaintiff's request, and the Delaware chancellor observed that there was strong evidence supporting that Acceptance's argument. Ultimately, however, the chancellor determined that Magid's stated purpose for the section 220 request was legitimate, and that Magid's stated reason for the request—a concern that Acceptance was being mismanaged—had been connected to the information relating to loss reserves that Magid had requested—albeit through expert testimony offered by Magid.

ter Montrose was decided." 2001 WL 1497177 at *7, 2001 Del. Ch. LEXIS 141 at 28–29.

■ This Court does not interpret the solitary sentence Plaintiffs rely upon to mean that the vice chancellor determined that loss reserve adjustments should have been made but were not. Indeed, this Court assigns minimal weight to the vice chancellor's statement for a variety of reasons, not least of which is that the vice chancellor himself repeatedly observed in the opinion that the issues were presented to him in the context of a summary proceeding. In addition, this Court is not convinced that the vice chancellor's finding that Acceptance made no reserve adjustment in response to the *Montrose*-related risk until four years after Montrose was decided was necessary to the court's ultimate decision that Magid was entitled to review Acceptance's books and records. Issue preclusion, therefore, is inappropriate. *See W.F.M., Inc. v. Cherry County, Nebraska*, 279 F.3d 640, 643 (8th Cir. 2002)( holding that "[u]nder issue preclusion, 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.' *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)").

Finally, Acceptance relies upon facts indicating that Acceptance's officers, specifically Coon, ultimately set its loss reserves in an amount less than the amount identified as the final reserve amount recommended by Coopers & Lybrand, and an amount less than other Acceptance's officers and employees may have recommended. This evidence does not demonstrate that Coon had information that was required to be disclosed on the Registration Statement, so even if the trier of fact determines that such evidence is credible, it would not sustain claim under Sections

11 and 15(a) of the Securities Act of 1933. Similarly, the evidence that Mace stated that the Company's past problems with under-reserving could have been tied to pressure to increase earnings adds no support to the Defendant's Sections 11 and 15(a) claims. However, Plaintiffs seek to amend the complaint to allege this fact to bolster the allegations of scienter relative to the section 10(b) claims. Because Judge Shanahan determined that the 10–b claims sufficiently allege scienter, there is no basis upon which to permit amendment. This decision will not exclude Plaintiffs from using evidence of Mace's statement or of Coon's methodologies—or lack thereof—as proof of scienter at trial.

**Conclusion**

All of the factors identified by the Eighth Circuit Court of Appeals in *Dennis* weigh against granting Plaintiffs' Motion for Leave to Amend the Complaint. The requested amendments seeking to reintroduce claims under Sections 11 and 15(a) of the 1933 Act likely would not survive a motion to dismiss. When this conclusion is combined with the presence of undue delay, unfair prejudice to the Defendants, and bad faith discovery practice by the Plaintiffs, the Court is compelled to deny Plaintiff's motion for leave to amend.

In connection with the Plaintiffs' Section 10–b and Rule 10b–5 claims, the allegations already contained in the complaint satisfactorily set forth the scienter element, and to the extent that Plaintiffs desire to use additional evidence of scienter as discussed in connection with this motion at the time of trial, the appropriateness of that material will be considered at that time.

Finally, it appears that Plaintiffs may desire to withdraw certain allegations relative to the failure to timely disclose reinsurance expenses related to CRCPlus. If that is the case, the Plaintiffs may file a

motion to voluntarily dismiss those claims, and the Court will consider it separately. For all the reasons provided in this memorandum,

IT IS ORDERED:

1) Plaintiffs' Motion for Leave to Amend the Complaint (Filing No. 156) is denied;

2) Plaintiffs' Motion to Strike Defendant's Supplement in Opposition to Plaintiffs' Motion for Leave to Amend (Filing No. 207) is denied; and

3) Plaintiffs' Motion for Leave to File a Reply Brief, Instanter (Filing No. 209) is granted, and the brief was considered in connection with Plaintiffs' motion for Leave to Amend the Complaint.